## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **PAMELA DE SOMOV,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:25-CV-00717-RP** |
| | § | |
| **JULIE BARNES, MARGARET** | § | |
| **SANO,** | § | |
| *Defendants* | | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Julie Barnes and Margaret Sano's ("Defendants") motion for summary judgment, Dkt. 132, and all related briefing. After considering the filings and the relevant law, the undersigned recommends that the District Judge deny the motion.

### I.    BACKGROUND

This lawsuit arises from a falling out between former friends over money. Plaintiff Pamela de Somov and Barnes maintained a close friendship for years, during which time they often loaned each other money as needed. Dkts. 136-22, at 7-8; 138-5, at 1-2. After de Somov experienced financial difficulties in 2016, Barnes allowed de Somov to use her credit card and PayPal account to cover certain expenses. Dkts. 136-22, at 9-10; 138-5, at 1-2. De Somov "accidentally" made some additional charges on Barnes's accounts, but she promised to pay back Barnes for those charges as well as

1

the other charges Barnes had allowed de Somov to make. Dkt. 136-22, at 12-13, 15; 138-5, at 2. De Somov did not pay back Barnes within the timeframe to which the women had agreed. Dkt. 136-22, at 10.

De Somov then moved to Austin, Texas, and during the move her phone became disconnected. Dkt. 138-5, at 22. After attempting and failing to reach de Somov regarding her promise to repay Barnes, Barnes sent de Somov a text message threatening to call the police to report the charges de Somov had made to Barnes's accounts as fraudulent. Dkts. 136-22, at 13; 138-5, at 2. Despite ultimately getting into contact with de Somov, Barnes began posting content online accusing de Somov of being a "scammer" and an "ID thief" based on Barnes's own experience with de Somov, as well as public records Barnes found online. Dkts. 136-22, at 19; 138-5, at 4-5. Barnes created a Tumblr blog and a Blogpost blog that both used the term "scammerpam" to refer to de Somov. Dkts. 136-3; 136-4; 136-10, at 2. Barnes also posted an image of de Somov on Craigslist and warned those in Lakeway, Texas to "watch out for [their] credit cards" because an "[i]nternet thief has moved near you!!" Dkts. 136-12; 136-13. Barnes also used TrustPilot and Quora to accuse de Somov of being a "scammer and a thief." Dkts. 136-14; 136-15. During this litigation, Barnes has continued to lodge accusations against de Somov through GoFundMe, Facebook, and LinkedIn. Dkts. 136-20; 136-21.

When Barnes learned that de Somov was working as a mortgage loan officer, Barnes reached out to de Somov's then-employer, Edge Home Finance, LLC ("Edge Home") to insist that it not allow de Somov to access "clients' sensitive information"

because de Somov had "stolen her identity" and "has a history of scamming people." Dkts. 136-22, at 45; 136-17; 136-18. Barnes also wrote a public review of Edge Home in which she accused the company of hiring an "ID thief" who "opens credit cards in your name and ruins your credit and your life," though Barnes did not identify de Somov by name in the post. Dkt. 136-19. During the almost-year that de Somov worked at Edge Home, she did not secure a single client. Dkt. 133-3. Although 18 prospective clients met with de Somov during this time, all of them "abruptly ceased communication without explanation," which de Somov posits is "consistent with those individuals encountering Barnes's defamatory online content upon searching [de Somov's] name." Dkt. 138-5, at 11-12. Edge Home terminated de Somov's employment after 10 months because she had not generated any business. Dkt. 133-3.

De Somov sued Defendants, leveling claims for defamation, business disparagement, civil conspiracy, and tortious interference with existing contract. Dkts. 1; 113, at 20-26. Defendants moved for summary judgment on de Somov's claims. Dkt. 132. De Somov opposed the motion, arguing that genuine disputes of material fact prevent summary judgment. Dkt. 136. De Somov then voluntarily dismissed her claims for defamation and business disparagement against Sano, as well as her civil conspiracy claims against both Defendants. Dkt. 139. De Somov's claims for defamation, business disparagement, and tortious interference with contract against Barnes are thus the only remaining claims at issue in Defendants' motion for summary judgment.[1]

---

[1] Barnes objected to certain portions of de Somov's affidavit filed in support of her response to the motion for summary judgment. Dkt. 144. The undersigned addresses the objections

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not

---

relevant to the resolution of the motion for summary judgment below and otherwise denies the objections as moot to the extent the objected-to testimony does not impact the disposition of the motion. *Jones v. United Parcel Serv., Inc.*, No. 3:06-cv-1535, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    DISCUSSION

**A.    A genuine dispute of material fact as to the falsity or false implication of Barnes's statements prevents the entry of summary judgment in her favor on de Somov's defamation claim.**

Barnes argues that de Somov's defamation claim fails because the moniker "scammerpam" is not capable of defamatory meaning, and in any event, de Somov cannot point to any content that Barnes published that is false or was made with negligence. Dkt. 132, at 4-7. Barnes also posits that de Somov's defamation-by-implication theory fails because it "require[s] numerous convoluted inferences that do not withstand scrutiny." *Id.* at 7-8. Finally, Barnes argues that de Somov cannot show that any of the alleged defamatory statements caused de Somov harm. *Id.* at 9-10. De Somov responds that Barnes' posts were designed to prove that de Somov "is actually a thief and criminal," despite Barnes's knowledge that de Somov is not in

fact a scammer, thief, or criminal. Dkt. 136, at 14-17. De Somov further contends that Barnes's statements caused de Somov harm because they constitute per se defamation, cost de Somov professional opportunities, and continue to cause de Somov emotional harm. *Id.* at 18-21. Because the evidence reveals a genuine factual dispute as to the falsity or false implication of Barnes's statements, the undersigned finds that summary judgment is not warranted on this claim.

To succeed on her defamation claim, de Somov must prove that (1) Barnes published a false statement; (2) that defamed de Somov; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citation omitted). Whether an alleged statement is defamatory depends on how a person of ordinary intelligence would perceive the statement in light of the surrounding circumstances. *See Carr v. Brasher*, 776 S.W.2d 567, 569-70 (Tex. 1989). Whether an allegedly defamatory statement constitutes an opinion or a verifiable fact is a question of law that should be answered from the perspective of a "'reasonable person's perception of the entirety of a publication and not merely on individual statements.'" *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). Only if the court determines the language to be "ambiguous or of doubtful import" should a jury determine what effect the statement would have on an ordinary person. *See Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). Texas law provides for liability if the "gist" of a collection of statements

conveys a false and defamatory impression, even if each statement is literally correct. *See Turner*, 38 S.W.3d at 116-17.

Barnes argues that the defamation claim fails because the moniker "scammerpam" is not verifiably false and should be treated as a non-actionable opinion under Texas law. Dkt. 132, at 4-6. De Somov responds that Barnes's use of "scammer" and other related terms were "clearly intended to suggest that de Somov is actually a thief and criminal" such that they are not merely opinions. Dkt. 136, at 13-15. For a statement to be actionable in a defamation claim, the statement must "assert an objectively verifiable fact, rather than an opinion[.]" *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.) (citation omitted); *see also Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (requiring that a statement be "verifiable as false" to support a defamation claim (citation omitted)); *see also Musser*, 723 S.W.2d at 655 (explaining that the threshold question in defamation cases is whether the words used "are reasonably capable of a defamatory meaning"). "Thus, statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions." *Tatum*, 554 S.W.3d at 639 (citation omitted).

The undersigned finds that Barnes's use of the term "scammer" in reference to de Somov, in the context of the blogs in which Barnes made such accusations, is capable of defamatory meaning. Because the question of whether a statement is capable of a defamatory meaning is assessed within the context of the entire publication, courts assessing the accusations that a plaintiff is a "scammer" or has

engaged in a "scam" have reached different results. In *Paul v. Findeisen*, for example, the court concluded that the word "scam" carried a defamatory meaning where it was used to accuse plaintiff of committing fraud. No. SA-24-CV-717-OLG (HJB), 2025 WL 1490768, at *6 (W.D. Tex. Mar. 26, 2025), *R. & R. adopted*, No. SA-24-CV-00717-OLG, 2025 WL 1490499 (W.D. Tex. May 22, 2025). However, other courts have concluded that accusations relating to a defendant's "scam" are "incapable of being proven true or false" since the word means "different things to different people." *See, e.g.*, *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987); *see also Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1297 (S.D. Fla. 2023) (finding statement accusing defendants of perpetrating a "scam" cannot form the basis of a defamation claim as a "non-literal assertion[] of fact and rhetorical hyperbole").

The term "scammer" has both a literal and figurative meaning, and here readers of Barnes's blog could read the term as an accusation of fraudulent criminal activity. Dkts. 136-3; 136-4; 136-10; *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (noting that question of whether term such as "scam" is "capable of being defamatory depends on which meaning is intended, a question that can be answered only by considering the context in which the term appears"). In the offending posts, Barnes accuses de Somov of being a "scammer" based on Barnes's opinions about de Somov's character, in addition to court records from lawsuits involving de Somov, a mug shot of de Somov from an expunged arrest, and online reviews from de Somov's online shop. Dkts. 136-3; 136-4; 136-10, at 2; *MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 377 (Tex. App.—Beaumont 2005, no pet.) ("The statements alleged to be

defamatory must be viewed in their context[.]" (citing *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App.–San Antonio 1996, no writ))). While many statements on the blogs "are not readily capable of being proven false in part due to their non-literal nature," others accuse de Somov of activity that a reader of ordinary intelligence could interpret as referring to specific acts of fraud. Dkts. 136-3, at 37; 136-10, at 5 (accusing de Somov of "Stealing," "Credit Card Fraud," and "Identity Theft"); *Akai*, 707 F. Supp. 3d at 1297; *Whitelock v. Stewart*, 661 S.W.3d 583, 600 (Tex. App.—El Paso 2023, pet. denied) ("[S]tatements to the effect that [a person] committed specific acts of fraud .... [are] objectively verifiable, making them actionable as defamation.").

Even given that her statements are capable of defamatory meaning, Barnes argues that de Somov cannot prove that anything Barnes posted on the blog was false. Dkt. 132, at 6-7. Yet de Somov may prevail on her defamation claim by demonstrating that the "gist" of Barnes's statements conveys "a false and defamatory impression, even if each statement is literally correct." Dkts. 132, at 6-7; 136, at 17; *Turner*, 38 S.W.3d at 116-17; *Houseman v. Publicaciones Paso del Norte, S.A. de C.V.*, 242 S.W.3d 518, 524 (Tex. App.—El Paso 2007, no pet.) ("Although all the statements in a publication may be true when read in isolation, the publication may convey a substantially false and defamatory impression by omitting material facts or suggestively juxtaposing true facts." (citing *Turner*, 38 S.W.3d at 115)). In addition, in her affidavit de Somov attests to the falsity of some of Barnes's more serious accusations, such as de Somov having committed identity theft, whereas Barnes

maintains the truth of those accusations. Dkts. 136-22, at 36, 45-46; 138-5, at 6-8.[2] Material disputes of fact as to the falsity of Barnes's statements thus preclude summary judgment on de Somov's defamation claim. *See Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 794 (Tex. 2019) (affirming denial of summary judgment where defendant "failed to conclusively prove the substantial truth of the [] alleged defamatory statements"); *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 924 (5th Cir. 2015) (affirming denial of summary judgment where evidence "create[ed] a factual dispute as to whether" defendant's statement was "false and defamatory"). The District Judge should deny Barnes's motion for summary judgment on de Somov's defamation claim.

### B. A genuine dispute of material fact as to the causation element of de Somov's tortious-interference claim prevents the entry of summary judgment in Barnes's favor.

In her motion for summary judgment, Barnes argues that the record "conclusively negates" the causation and damages elements of de Somov's tortious-interference claim. Dkt. 132, at 12-13. De Somov responds that her evidence is sufficient to show that de Somov was terminated from her employment because of Barnes's direct outreach to de Somov's employer and online posts about de Somov that impeded de Somov's ability to acquire clients. Dkt. 136, at 21-22. In reply, Barnes

---

[2] Barnes objected to this portion of de Somov's affidavit as improperly offering legal conclusions. Dkt. 144, at 6-7. Yet de Somov's assertions that she "did not steal Barnes' identity," has "never been convicted of a crime," and "has not lived off of stolen credit cards" are statements of fact that directly contradict specific, factual accusations Barnes lodged against de Somov in her online posts. Dkt. 138-5, at 6-7. The undersigned may thus rely on them in concluding that factual disputes prevent a finding that Barnes's statements were not false. Barnes's objections in this regard are overruled.

insists that de Somov failed to produce any evidence supporting the causation element of her tortious-interference claim. Dkt. 140, at 9-10.

To prevail on a claim for tortious interference with contract, de Somov must prove: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). To establish proximate cause, a party must show that the defendant took an active part in persuading a party to a contract to breach it. *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008). The causation element requires proof that "(1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act ('but for' the act), the harm would not have occurred." *HMC Hotel Props. II Ltd. P'ship v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014). Mere conjecture, guess, or speculation is insufficient to establish proximate cause. *Id.* But evidence constituting "more than a mere scintilla" is sufficient to prevent judgment as a matter of law. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In support of her tortious-interference claim, de Somov points to evidence showing that Barnes repeatedly reached out to de Somov's employer in 2023 to lodge accusations against de Somov, Barnes's testimony that she told Edge Home that it should not employ de Somov, as well as the online posts Barnes created about de Somov. Dkts. 136-3; 136-4; 136-10, at 3-6 (printout of 2017 "scammerpam" Blogspot

11

Blog); 136-18 (email thread dated April 2023 discussing Barnes's communications with Edge Home); 136-22, at 45 (Barnes's deposition testimony that she told Edge Home "that they were putting their customer's personal information in jeopardy by [allowing] Pamela [to have] access to it"). De Somov also attached to her response reviews from TrustPilot from 2018 and 2020 in which Barnes called de Somov a "scammer and a thief," as well as a March 2023 review in which Barnes stated that "Edge Home hired an ID thief" but did not identify de Somov by name. Dkts. 136-14, at 5 (2018 and 2020 TrustPilot review); 136-19 (2023 TrustPilot review); 136-22, at 40. In her affidavit, de Somov also listed potential clients "who initially engaged with [her but] abruptly ceased communication without explanation," which de Somov posits is "consistent with those individuals encountering Barnes's defamatory online content upon searching my name." Dkt. 138-5, at 11.[3]

Barnes, on the other hand, maintains that "Edge Home Finance terminated its contract with de Somov for reasons entirely unrelated to Barnes' communications," pointing to the November 2024 email in which Edge Home indicated that it was terminating de Somov's employment because during her tenure she had not produced

---

[3] Barnes objected to de Somov's assertion that this pattern of lost potential clients is consistent with the potential clients having found Barnes's statements about de Somov online as speculation and for lacking foundation. Dkt. 144, at 10-11. Although de Somov's opinion as to the link between Barnes's statements and de Somov's loss of potential clients may not be sufficient to conclusively establish causation, Barnes does not identify any authority showing that de Somov may not offer her opinion as to the "consisten[cy]" between her loss of clients and Barnes's online accusations given that her opinion is grounded in her personal experience of losing the clients and understanding that "referral sources routinely search a loan officer's name online before entering a business relationship." Dkt. 138-5, at 10. The undersigned overrules Barnes's objections.

"one file in Lending Pad" nor "had a closing." Dkts. 132, at 12; 133-3 (notice of termination email); 133-2 (deposition testimony from de Somov confirming that she had not made any money as a loan officer since 2004); 140, at 10 (emphasizing that "critically, de Somov's actual notice of termination makes no reference to any actions of Barnes"). Barnes also contends that the time that passed between Barnes's communications with Edge Home and de Somov's termination from Edge Home is "wholly inconsistent with the claim that those acts were a substantial factor in causing de Somov's termination." Dkts. 133-3 (November 14, 2024, termination email); 136-18 (April 27, 2023, email thread demonstrating Edge Home's awareness of Barnes's allegations against de Somov).[4] Finally, Barnes points out that the 2023 TrustPilot review does not identify de Somov. Dkts. 140, at 9 n.2; 136-19.

While the causal connection between Barnes's statements and de Somov's termination may ultimately prove too attenuated for de Somov's tortious-interference claim to succeed, de Somov has presented more than a "scintilla" of evidence that Barnes's actions were a "substantial factor" in de Somov being unable to secure any business and her ultimate termination from Edge Home. *Arismendez*, 493 F.3d at 606; *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also Wal-Mart Stores, Inc. v. Ortiz*, No. 13-98-518-CV, 2000 WL 35729388, at *6 (Tex. App.—Corpus Christi Aug. 3, 2000, pet. denied) ("Proximate cause does not require a single causal factor."). De Somov's

---

[4] De Somov asserts in her declaration that she worked for Edge Home between March 10, 2023, and December 19, 2023, Dkt. 138-5, at 10, yet the notice of termination demonstrates that she was in fact terminated from her job at Edge Home in November 2024, Dkt. 133-3.

identification of potential clients who "abruptly ceased communication without explanation" after initially expressing interest in working with de Somov, the online content identifying de Somov as a "scammer," along with de Somov's understanding that "referral sources routinely search a loan officer's name online before entering a business relationship," support the logical inference that Barnes's actions caused de Somov's employment "contract to be more difficult to fulfill" since she could not secure any clients. Dkt. 138-5, at 10-13; 136-10; 136-14; *Richardson-Eagle*, 213 S.W.3d at 474; *Jenkins v. Yin Invs. USA, LP*, No. 6:12-CV-654-MHS, 2013 WL 12122665, at *2 (E.D. Tex. Oct. 29, 2013) ("The cause-in-fact element of proximate cause can be proven by circumstantial evidence from which the jury can infer proximate cause.").[5]

Barnes is correct that a jury could ultimately conclude that de Somov's failure to secure clients and subsequent termination from Edge Home was not caused by Barnes's conduct; yet summary judgment is inappropriate where the record could also lead a reasonable jury to conclude that Barnes's conduct did cause de Somov's injuries. Given that "[p]roximate cause is generally a question of fact for the jury" and the evidence here is susceptible to multiple interpretations, de Somov's tortious-interference claim should be allowed to proceed to trial. *Rodriguez v. Moerbe*, 963 S.W.2d 808, 819 (Tex. App.—San Antonio 1998, pet. denied) ("The general rule that the question of proximate cause is for the jury has been applied where the injury was

---

[5] Barnes posits that de Somov's failure to make "any money as a loan officer" during her tenure with Edge Home "conclusively negates that she suffered any damages as a result of Barnes' alleged interference." Dkt. 132, at 13. Yet the same evidence also supports the conclusion that de Somov was unable to secure any clients because of the copious online content identifying de Somov as a "scammer." A jury is in the best position to evaluate whether this evidence supports causation here.

the result of concurring causes."). The District Judge should deny Barnes's motion for summary judgment on de Somov's tortious-interference claim.

### C. A genuine dispute of material fact as to whether Barnes caused de Somov to suffer special damages prevents the entry of summary judgment in Barnes's favor on de Somov's business-disparagement claim.

Barnes finally moves for summary judgment on de Somov's business-disparagement claim, arguing that de Somov's own testimony "conclusively disproves" the damages element of her claim. Dkt. 132, at 13-15. De Somov responds that she has presented sufficient evidence in support of the special-damages element of her claim by "presenting both a list of specific lost leads and a quantification of her overall lost sales[.]" Dkt. 136, at 23. In reply, Barnes insists that de Somov's identification of 18 potential clients that she claims she was unable to secure because of Barnes's statements is insufficient to show "direct, pecuniary loss attributable to the false communication[s]" of Barnes. Dkt. 140, at 8-9.

Under Texas law, the elements of a business-disparagement claim are "(1) the defendant published false and disparaging information about [the plaintiff], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). The special damages requirement "goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'" *Harlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (quoting W. Keeton, Prosser and Keeton on the Law of Torts, § 128 at 971 (5th ed. 1984)). To prove special damages, a plaintiff must provide evidence "that the disparaging

15

communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings." *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011)

Barnes's motion for summary judgment revolves around whether the disparaging information Barnes published online resulted in special damages to de Somov. Barnes posits that de Somov's testimony that she had not made any money as a loan officer since the time she previously held an active license in 2004 shows that she did not lose any clients as a result of Barnes's actions. Dkt. 132, at 13-15.[6] Barnes cites *Rawline v. Capital Title of Texas, LLC* for the proposition that de Somov has not presented any evidence of lost business opportunities, yet in her affidavit de Somov identified by name 18 potential clients who expressed interest in working with her between 2023 and 2025 but "abruptly ceased communication without explanation." Dkts. 132, at 14; 138-5, at 11 (explaining timeline for when each potential client met with de Somov and then cut off communications shortly afterward); 140, at 9; No. CIV.A. H-11-2379, 2012 WL 2194054, at *5 (S.D. Tex. June 14, 2012). Barnes also cites *Pseudonym v. East Houston Regional Medical Center* to argue that "de Somov's own testimony confirms she has no evidence of any direct pecuniary loss that has been realized or liquidated resulting from any action of" Barnes, but again de Somov's identification of specific lost sales and quantification of

---

[6] De Somov asserts in her declaration that she was a "successful" mortgage broker from 2002 to 2004, but then "took some time off from that business and focused on [her] family." Dkt. 138-5, at 8-9, 13.

16

those sales stands in stark contrast to the allegations in that case. Dkt. 132, at 14; No. 4:17-CV-3277, 2018 WL 2392200, at *6 (S.D. Tex. Apr. 25, 2018) (recommending dismissal of business-disparagement claim under Rule 12(b)(6) where plaintiff "ha[d] not pointed to any specific patient she has lost or any specific instance of re-scheduling, and has not attempted to put a dollar amount on her damages"), *R. & R. adopted*, No. 4:17-CV-3277, 2018 WL 2390129 (S.D. Tex. May 25, 2018).

Contrary to the court's conclusion in *Rawline* that the plaintiff presented "no evidence or proof [] of any *realized* or *liquidated* damages which were the result of [the defendant]'s alleged disparagement," here de Somov included evidence of her alleged special damages in her affidavit. Dkt. 138-5, at 10-11; 2012 WL 2194054, at *5. Specifically, De Somov averred in her affidavit that the pattern of lost potential clients she experienced is "consistent with those individuals encountering Barnes's defamatory online content upon searching my name." Dkt. 138-5, at 11. De Somov also estimates—based on average sales of other loan officers at Edge Home and her current employer—that she lost one loan per month due to Barnes's conduct which has resulted in $144,000 in lost commissions over the last twelve months. Dkts. 136, at 22-23; 138-5, at 11-13; 138-19.[7] While "general averments of direct economic losses

---

[7] Barnes objected to de Somov's testimony on damages as "unscientific, speculative, and inadmissible." Dkt. 144, at 13-14. As de Somov points out, however, her testimony is based on "particularized knowledge from her own experience" as a mortgage loan officer and "does not involve complicated economic analysis that requires an expert economist[.]" Dkt. 145, at 4-5; *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 374 (5th Cir. 2002) (affirming allowance of "lost profit testimony by a layperson witness" with "personal knowledge" of business); *see also Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) ("The modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination."). De Somov also

and lost profits, without more," are insufficient to establish that Barnes's conduct caused de Somov to suffer special damages, here de Somov offers facts supporting that contention by identifying specific lost clients and explaining why she believes their failure to follow up with de Somov resulted from Barnes's alleged disparagement, in addition to explaining how she calculated her alleged special damages. Dkt. 138-5, at 10-11; *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Summary judgment on de Somov's business-disparagement claim is not warranted. The District Judge should accordingly deny Defendants' motion for summary judgment on this claim.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **DENY** Defendants' motion for summary judgment, Dkt. 132.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. U. S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the

---

attached evidence of the average sales for loan officers at the two companies where she last worked. Dkts. 138-19; 138-20. Barnes's objections in this regard are overruled.

18

District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 28, 2026.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE