**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PAMELA DE SOMOV,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-CV-00717-RP** |
| | § | |
| **JULIE BARNES and MARGARET** | § | |
| **SANO,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT JULIE BARNES'S OBJECTIONS TO REPORT AND**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

Defendant Julie Barnes ("Defendant" or "Barnes"), files these Objections to the Report and Recommendation of the Honorable United States Magistrate Judge (the "Report"), issued on July 28, 2026 (Doc. 146), and would respectfully show the Court as follows:

**I.**
**INTRODUCTION**

1. In the Report,[1] the Honorable United States Magistrate Judge recommends that the Court deny the Motion for Summary Judgment filed by Defendants Julie Barnes and Margaret Sano (collectively, "Defendants") in its entirety.[2]  Defendant Barnes objects to the recommendation that the Court deny summary judgment on Pamela de Somov's ("Plaintiff" or "de Somov") business disparagement claim.

2. de Somov's business disparagement claim fails as a matter of law because she cannot present sufficient evidence of special damages. Critically, special damages are not a

---

[1] *See* Doc. 146.
[2] *See* Doc. 132 (Defendants' Motion for Summary Judgment).

*Defendant Barnes's Objections to Report and Recommendation*                                    *1*

measure of recovery that a jury may estimate. Instead, they are an element that goes to the cause of action itself, and they require proof of pecuniary loss that has been realized or liquidated. de Somov has none. She earned nothing as a loan officer during the relevant period, identifies no closed loan or lost customer, and offers only an estimate, built on the average production of other loan officers, of commissions she never earned, together with her own assumption that some eighteen potential clients (identified for the first time in response to Defendants' motion for summary judgment after the close of discovery) must have discovered Barnes's online posts. That is not evidence of realized loss or of causation. Thus, it cannot sustain Plaintiff's business disparagement claim.

3.      The Report erred in three related respects. First, it accepted an estimate of income de Somov never earned as special damages, contrary to Texas law. Second, it treated de Somov's speculation about why alleged potential clients stopped responding as though it was evidence that Barnes's statements caused any loss. Third, it distinguished *Rawline* and *Dr. C* on the labels de Somov attached to her claim rather than the realized, causally connected loss those cases expressly required. On *de novo* review, each error independently entitles Barnes to summary judgment on Plaintiff's business disparagement claim.

4.      Barnes respectfully requests that the Court sustain her objections to the Report, reject the Report's recommendation on the business disparagement claim, and grant summary judgment dismissing that claim.

## II.
### ARGUMENT AND AUTHORITIES

5.      When a party timely objects to a Magistrate Judge's recommendations and proposed findings, the District Court must make a *de novo* determination of the objectionable portions. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 149–

53 (1985); *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). Barnes's objections are filed within 14 days after being served with a copy of the Report. Accordingly, the magistrate's findings to which Barnes objects are subject to *de novo* review. *See Longmire*, 921 F.2d at 623.

6.    To succeed on a claim for business disparagement under Texas law, de Somov must prove "(1) the defendant published false and disparaging information about [the plaintiff], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

7.    To meet the special damages requirement, de Somov must present evidence of "direct, pecuniary loss attributable to the false communications" of Defendants. *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) (citing *Hurlbut v. Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 767 (Tex. 1987)); *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) ("To prove special damages, a plaintiff must provide evidence 'that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings.'" (quoting *Astoria Indus. Of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex. App.—Fort Worth 2007, pet. denied))). The special damages requirement is exacting. The element "goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'" *Hurlbut*, 749 S.W.2d at 767; *accord Astoria*, 223 S.W.3d at 628.

**A.    de Somov's estimated lost commissions are not realized or liquidated special damages.**

8.    The Report erred in overruling Barnes' objection to de Somov's speculative damages testimony.  In overruling the objection, the Report cites *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 374 (5th Cir. 2002) for the proposition that lay testimony is allowable as

evidence of lost profits where the witness has personal knowledge of the business. Doc. 146, at 17 n.7. In *Miss. Chem.*, however, the lay witness, by virtue of his role as the Director of Risk Management and Property Taxation of Miss. Chem. Corp., had prior experience computing lost profits for insurance purposes. *Id.* at 373. And critically, the "production figures . . . at the core" of the lay witness's "damage computation were entered into evidence from other sources." *Id.* at 374. By contrast, de Somov has no prior experience in calculating or estimating lost commissions, she has no personal knowledge of the Edge Home Finance and NEXA Mortgage financial data on which she relies, and she is the sole source of information supporting her speculative damages theory. *See* de Somov Decl. [Filed Under Seal at Doc. 138] at ¶¶36-38. The fact that de Somov says she worked as a loan officer some twenty years ago does not make her competent to testify about current industry averages based on loan officers she has no personal knowledge of. *Cf. Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 563 (S.D. Tex. 2015) ("Rule 701 does not give a corporate owner or officer license to testify about all aspects of the industry or the business."). Nor is de Somov attempting to estimate a specific lost commission attributable to each of the eighteen potential clients she has identified. *See* de Somov Decl. [Filed Under Seal at Doc. 138] at ¶31. For example, had de Somov offered the specific loan amount sought by any one of the eighteen potential clients, de Somov could have testified as to her commission rate, and calculated the specific commission she would have earned. She did not and cannot now. Instead, de Somov relies on an industry average and her own guess at an average commission (without any evidence of any actual loan amount), to speculate that she has suffered some $144,000 in lost commissions. Accordingly, Barnes asks the Court to sustain her objection to de Somov's damages testimony.

9. Even accepting de Somov's damages estimate testimony as competent lay testimony (which Barnes' denies), de Somov's damages theory fails at the threshold because it

rests on an estimate of income she never earned, not a loss that has been realized or liquidated. de Somov testified that she has made no money as a loan officer since 2004 and had no funded transactions during her time at Edge Home Finance. *See* Doc. 132-3 (Audio Recording of the Non-Stenographic Deposition of Pamela de Somov) at 00:23:14–00:23:23; 00:25:50–00:26:05, 00:53:06–00:53:30, 00:56:20–00:57:25, 00:57:49–00:59:45; 00:59:51–01:01:00. She does not identify a single loan that closed and produced a commission that she subsequently lost. Instead, she guesses that she lost one loan per month, which she values at $144,000 in commissions she never received, using the average production of other loan officers rather than any sale she made herself. *See* de Somov Decl. [Filed Under Seal at Doc. 138] at ¶¶ 36–38. Her $12,000 per-transaction figure is extrapolated from Edge Home Finance's total office volume of $8.5 billion across 21,585 transactions and NEXA Mortgage's $8.75 billion across 25,812 transactions. *Id.* at ¶ 37. Moreover, she concedes the projection assumes she would close loans at a rate she has never achieved. *Id.* at ¶¶ 36–38. Texas law rejects exactly this kind of estimated, unrealized loss. For example, in *Astoria*, the plaintiff's projection of what corrective advertising would cost, an expense it had not incurred, was not "realized or liquidated" special damages. 223 S.W.3d at 628–29. A plaintiff cannot lose commissions she never earned, and an average drawn from other loan officers' sales is neither realized nor liquidated as to de Somov herself.

10.    Moreover, de Somov's damages estimate testimony does not create a fact issue because special damages are an element that "goes to the cause of action itself," not merely a measure of recovery. *See Hurlbut*, 749 S.W.2d at 767. The Report treats de Somov's calculation as sufficient because she "explain[ed] how she calculated her alleged damages,"[3] but that reasoning conflates the amount of damages with their existence. The eighteen prospective clients

---

[3] Doc. 146, at 18.

de Somov names never became her clients, so there was no sale, trade, or dealing to lose.  Nor does de Somov offer the amount of the loans the supposed potential clients inquired about, from which any actual commission could have calculated. Loss of a potential client with whom the plaintiff has never transacted, multiplied by industry averages, is not the realized or liquidated pecuniary loss a business disparagement claim requires.  Moreover, no favorable inference can convert Plaintiff's projection into an actual loss.

11.    Accordingly, de Somov's speculations about lost commissions are not realized or liquidated special damages and the Report's conclusion to the contrary should be rejected.

**B.    de Somov offers no evidence that Barnes's statements caused any third party not to deal with her.**

12.    In recommending that the Court deny Defendants' motion for summary judgment on de Somov's business disparagement claim, the magistrate judge concludes that de Somov offered facts supporting special damages by "identifying specific lost clients and explaining why she believes their failure to follow up with de Somov resulted from Barnes's alleged disparagement, in addition to explaining how she calculated her alleged damages."[4]  However, at summary judgment, the non-moving party must present more than just conjecture and speculation to support her claims. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) (en banc); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

13.    Here, de Somov relies entirely on conjecture and speculation. Although de Somov alleges eighteen potential clients, she does not point to a shred of evidence that she was unable to secure those clients because of Barnes's statements. She can identify no specific lost sales, no lost clients, and no specific transaction that would have closed ***but for*** Barnes's conduct.  She does not (nor could she) testify that any of the eighteen potential clients had a scheduling loan closing that

---

[4] Doc. 146, at 18.

was cancelled *because* of Barnes' conduct. *See Sanders v. Sanders*, No. 05-20-00395-CV, 2021 Tex. App. LEXIS 9424, at *8-9 (Tex. App.—Dallas Nov. 19, 2021, no pet.) ("Although Mr. Sanders testified as to OWN cancelling his show, the termination of his endorsement contracts with Van Heusen and GMC, and the reduction in the amount the NFL paid him, he could not explain how he knew those losses occurred because of Ms. Sander's statements, rather than for any other unrelated reason.  Thus, he failed to establish how those losses flowed directly from the defamation.").

14.     Instead, she relies on the unsupported assumptions made in her affidavit.  She avers only that the pattern of prospective clients who stopped responding is "consistent with those individuals encountering Barnes's defamatory online content upon searching [her] name." *See* de Somov Decl. [Filed Under Seal at Doc. 138] at ¶ 31. That is de Somov's own surmise about the unknown motivations of third parties. Not one of the eighteen has stated that he or she saw Barnes's statements, let alone declined to work with de Somov because of them. *Id.* at ¶¶ 31, 39. Texas law requires evidence that the disparaging communication "play a substantial part in inducing" the third party not to deal with the plaintiff. *Hurlbut*, 749 S.W.2d at 767. That showing is made only where the record ties the third party's decision to the statement. *Cf. Kinect Solar, LLC v. Panasonic Corp. of N. Am.*, No. 1:20-CV-378-LY, 2020 U.S. Dist. LEXIS 202389, at *14-15 (W.D. Tex. Oct. 30, 2020) (special damages adequately alleged where prospective purchasers told the plaintiff they declined to buy because of the defendant's false statements). de Somov offers no comparable evidence, only the temporal coincidence that some prospective clients stopped responding. Under Texas law, this is not evidence of causation.

15.     In sum, because de Somov offers no evidence that Barnes's statements caused any third party not to deal with her, the Report's conclusion that de Somov offered facts supporting special damages should be rejected.

---

**C.**    ***Rawline* and *Dr. C* confirm that listing prospective clients and reciting a figure is not a realized, causally connected loss.**

16.     The Report distinguishes *Rawline* and *Dr. C* on the grounds that de Somov, unlike those plaintiffs, named specific prospective clients and attached a dollar figure. But those decisions did not turn on the act of naming a customer or reciting a number. Instead, they turned on the absence of *realized loss* caused by the disparagement. *See Dr. C v. E. Houston Reg'l Med. Ctr.*, No. 4:17-CV-3277, 2018 U.S. Dist. LEXIS 88472, at *17–20 (S.D. Tex. Apr. 25, 2018) (dismissing business disparagement claim under Rule 12(b)(6) where plaintiff had "not pointed to any specific patients she has lost . . . and has not attempted to put a dollar amount on her damages."); *Rawline v. Capital Title of Tex., LLC*, No. H-11-2379, 2012 U.S. Dist. LEXIS 82433, at *15–16 (S.D. Tex. June 12, 2012) (granting summary judgment on business disparagement claim where there was no evidence of any realized or liquidated damages which were the result of the defendant's alleged disparagement). Naming prospective clients who never became clients, and attaching an estimate built on other loan officers' averages does not establish a realized and causally connected pecuniary loss. de Somov cannot defeat summary judgment by dressing speculation in specifics.

17.     In sum, de Somov has no evidence of any direct pecuniary loss that has been realized or liquidated resulting from Barnes's actions, and the Report erroneously concludes that de Somov's business disparagement claim survives summary judgment. For these reasons, the Court should sustain Barnes's objections, reject the Report's conclusion regarding Plaintiff's business disparagement claim, and dismiss that claim.

**III.**
**PRAYER**

WHEREFORE, Defendant Julie Barnes prays that the Court sustain her Objections, reject the Report's recommendation on the business disparagement claim, and grant summary judgment

---

dismissing that claim. Barnes also prays for such other and further relief, both legal and equitable, to which she may be justly entitled.

Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**
AUSTIN JONES (SBN 24116579)
IAN DAVIS (SBN 24120793)
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
ajones@mcginnislaw.com
idavis@mcginnislaw.com

By:   */s/ Austin L. Jones*
        AUSTIN JONES
        State Bar No. 24116579

***Attorneys for Defendant Julie Barnes***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served on all counsel of record via the CM/ECF system on this 11th day of August, 2026.

*/s/ Austin L. Jones*
AUSTIN JONES

---

*Defendant Barnes's Objections to Report and Recommendation*                                                  9